IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**REGAN CLEVENGER**                                                                       **PLAINTIFF**

**V.**                                                                    **CIVIL ACTION NO. 4:20-CV-8-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**

## MEMORANDUM OPINION AND FINAL JUDGMENT

Plaintiff Regan Clevenger filed suit under 42 U.S.C. § 405(g) for judicial review of the unfavorable decision of the Commissioner of Social Security. Docket 1. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provision of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Docket 13. The Court, having considered the record, the administrative transcript, the briefs of the parties, and the applicable law, and for the reasons set forth on the record at the conclusion of the hearing, finds that the Commissioner's decision is supported by substantial evidence.

1. *<u>Simple Work</u>*

In the present case, the plaintiff raises what has become a familiar issue. Here, the plaintiff points out that when the ALJ in his RFC limited the plaintiff to "simple work," the VE provided jobs she could perform that had a Reasoning Level of three.[1] The plaintiff argues that because the Dictionary of Occupational Titles describes jobs with a Reasoning Level of three as those jobs requiring an ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form . . . [and] deal with problems involving several concrete variables in or from standardized situation," they are fundamentally inconsistent with

---

[1] Specifically, the VE provided five jobs, one of which had a reasoning level of four (information clerk) and one was obsolete (addresser). However, the remaining three jobs—all with a reasoning level of three—totaled 775,000 in the national economy.

"simple work." The Administration responds with essentially two arguments: (1) that the plaintiff is incorrect and that someone limited to simple work is capable of performing jobs with a Reasoning Level of three; and (2) that the plaintiff waived this argument when she failed to raise it at the administrative level.

As to both of the Administration's arguments, the court looks to *Ruffin v. Colvin*, 2017 WL 536549 (S.D. Miss. February 8, 2017). In *Ruffin*, the court faced virtually identical arguments as those in the present case. There the court found that if "simple" jobs were in conflict with jobs with a Reasoning Level of three, that conflict was at best indirect or implied and thus waived if not argued at the administrative level. *Ruffin*, 2017 WL 536549 at *7. This court finds the *Ruffin* court's reasoning persuasive and will thus affirm the ALJ's decision.

With her first argument, the plaintiff contends that when the ALJ limited the plaintiff to "simple work and cannot perform fast-paced work such as production work," the VE provided jobs that conflicted with that limitation. The question for the court, therefore, is whether there was a conflict, and after examining the caselaw, the court finds there is no conflict.

As the *Ruffin* court explained after an exhaustive search into the split of authority, "the majority of federal district courts have concluded that 'a job requiring level-three reasoning does not necessarily conflict with an RFC limited to simple and unskilled work.'" *Id.* at *4 (quoting *Thompson v. Astrue*, 2012 WL 787367, at *10 (D. Mass. Feb. 17, 2012)). Consequently, this court finds the ALJ did not err in the present case when he found the plaintiff was limited to "simple work [but] could not perform fast-paced work such as production work," but that she could nevertheless perform jobs with a Reasoning Level of three.

Next, the government argues even if the court was to find a conflict in the jobs provided by the VE and a Reasoning Level of three, the plaintiff waived this argument when she did not

make it at the administrative level. Because the court finds no conflict exists, this second argument could be seen as moot, but in the interests of clarity and completion, the court will address it as well.

To address whether the plaintiff waived this argument, the court looks first to *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000). In *Carey*, the court examined three types of conflicts that might exist between a VE's recommendations and the Dictionary of Occupational Titles. First, there would be a conflict when the VE testifies "that a particular job requires a particular exertional or skill level, [but] the DOT expressly provides that the job requires a different exertional level." *Carey*, 230 F.3d at 144 n.2. This could occur when, for example, a VE testifies that a particular job requires only a sedentary level of exertion when the DOT actually provides that it requires a medium level. Second, there would be a conflict "when the [VE]'s testimony places the ALJ's finding with respect to the claimant's [RFC] or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT." *Id.* This could occur when, for example, a VE testifies that a claimant could perform a job the DOT classifies as light when the ALJ limited the plaintiff to sedentary work. Third, there could be a situation in which the conflict between the VE's testimony and the DOT might be less obvious than the first two types. In other words, there could be conflicts better described as "implied or indirect." *Id.* at 146-47. If there was a conflict in the present action between simple work and jobs that require a Reasoning Level of three, it would at best be described as implied or indirect. Clearly, such an alleged conflict does not fit within either of the first two types, and if it did exist as an implied or indirect conflict, the plaintiff would have waived any such argument. It is this third type of conflict (implied or indirect) the Fifth Circuit has held will be waived when not presented at the administrative level.

Discussing waiver of these implied conflicts, the *Carey* court held that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Id.*[2] Consequently, to the extent that a conflict exists in the jobs presented by the VE and the RFC provided by the ALJ, the court finds the plaintiff waived any such argument when she failed to raise it at the administrative level.

### 2. Improved Medical Condition

With her second argument, the plaintiff argues the ALJ erred when he found the plaintiff's medical condition had improved. The present case is a termination of benefits case. The Commissioner found the plaintiff disabled as of January 1, 2002, but on December 9, 2016 the Commissioner found she was no longer disabled as of December 1, 2016. The Fifth Circuit has addressed the scope of this court's review of the termination of benefits. Even though the burden of proving disability is on the claimant, "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973). In other words, once benefits have been awarded, the claimant is afforded a "presumption of continuing disability that requires the Secretary to provide evidence" that the claimant's condition has improved. *Taylor v. Heckler*, 742 F.2d 253, 255 (5th Cir. 1984). In addition, the Commissioner must weigh the facts which formed the basis for the prior determination of disability with the Commissioner's new evidence and any additional evidence

---

[2] While at first blush it may appear as if the more obvious conflicts when not addressed would be waived, but a close reading of *Carey* makes clear that just the opposite exists. That is, it is the more difficult to recognize conflicts or arguments not addressed at the administrative hearing that are waived when argued for the first time before the district court.

submitted the claimant. The ultimate burden of proof lies with the Secretary in termination proceedings.

Even though the Commissioner bears the burden of proof in cessation cases, the standard of review on appeal is the same as the standard in other social security disability cases. Under 42 U.S.C 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. If the Commissioner fails to apply the correct legal standards or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.

In the present case, the government submitted an enormous amount of evidence to prove the plaintiff was no longer disabled and certainly capable of performing jobs consistent with the RFC. The ALJ found the plaintiff capable of performing light work, "except the claimant can stand/walk for four hours in an eight hour workday and can sit for six hours in an eight hour workday." In support of its decision to terminate benefits, the Commissioner provided evidence that the plaintiff was not only competing in 5K walks but actually won one of them. The Commissioner showed that various postings on social media showed her swimming and racing. An employee of DK Truck Outfitters explained that the plaintiff *worked* there and had no problem walking. The plaintiff herself admitted she once sat in her car waiting for a child for six hours.

In contrast to this evidence, the plaintiff provides instances in which she complained to healthcare providers that she continued to suffer from back problems and pain. However, most of these records show nothing more than subjective complaints from the plaintiff whose testimony

must be seen as inconsistent at the very least with much of the record. Understanding that, in conjunction with such strong evidence that the plaintiff is capable of a perfectly normal life—including working and racing—the court finds substantial evidence to support the Commissioner's decision to terminate her benefits.

### 3. New Medical Evidence

Next, the plaintiff argues the court should remand this case for the Commissioner to consider new medical evidence submitted for the first time to this court. That evidence consists of records from Southern Spine Specialists, dated from September 19, 2019, to September 26, 2019. As both sides point out, this court may remand for administrative consideration of new evidence that is material and where the plaintiff shows good cause for the failure to incorporate it into the prior proceeding. *See Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).

To determine whether the new evidence is material, the court looks to see whether it relates to the time period for which benefits were denied and whether there is a reasonable possibility that it would have changed the outcome of the decision. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). Here, the records relate to a period almost three years after the date the Commissioner found the claimant was no longer disabled, and unlike the plaintiff in *Ripley*, there is nothing to suggest that anything revealed in these new records existed three years earlier. In *Ripley*, the new evidence was scar tissue revealed during surgery subsepquent to the Commissioner's decision that had been *caused* by events that occurred during the relevant time period. *Ripley*, 67 F.3d at 556. As the government argues, the only thing the new evidence possibly shows here is deterioration of a condition that was correctly held to be non-disabling by the ALJ at the time of his decision. Consequently, remand is not appropriate as to this issue. *See Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003).

As to good cause for why the new evidence was not incorporated into the prior proceeding, the court notes the records were created in September 2019. The court also notes the claimant appealed the ALJ's decision to the Appeals Council in November 2019 but did not provide them to the Appeals Council. Because there has been no showing as to why the records were not provided to the Council, it follows there is no good cause for the plaintiff's failure to incorporate it into the prior proceeding.

### 4. Consultative Examination

With her final argument the plaintiff argues the ALJ erred when he failed to order a Consultative Examination. In support of her position, the plaintiff writes, [w]hen the ALJ determined that Plaintiff's disability ended on December 1, 2016, it is not clear that the ALJ relied on any medical opinions or what evidence the ALJ relied on when determining that Plaintiff's disability ended." While it is not entirely clear, it appears the plaintiff is arguing the Commissioner could not terminate her benefits without a medical opinion, but such a position is clearly not the law. *See, e.g., Gonzales v. Colvin*, 2016 WL 107843, at *10 (N.D. Tex. Jan. 11, 2016). Moreover, it is clear to the court that the ALJ relied heavily on the CDIU investigative report, and the court finds that more than sufficient. As discussed *supra*, the investigation revealed the plaintiff living a normal and extremely active life, all while receiving benefits from the Social Security Administration. When the Administration saw the evidence provided, it terminated her benefits, and the court finds there was far more than substantial evidence to do so.

Because the ALJ's decision was supported by substantial evidence, the court affirms the decision of the Commissioner.

**SO ORDERED**, this the 22nd day of February, 2021.

/s/ David A. Sanders
**UNITED STATES MAGISTRATE JUDGE**